**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **CORY EFFENTIS EDWARDS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 3:05-CV-1225-WHA-CSC** |
| | ) |
| **JENNIFER STRONG, et al.** | ) |
| | ) |
| **Defendants.** | ) |

<u>**DEFENDANTS' SPECIAL REPORT**</u>

COME NOW Tallapoosa County, Alabama, Sheriff Jimmy Abbett and Corrections Officer Jennifer Strong, Defendants[1] in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On June 27, 2005, the Plaintiff Cory Effentis Edwards filed his Complaint in the United States District Court for the Northern District of Alabama. On December 14, 2005, the case was transferred to the United States District Court for the Middle District of Alabama. On January 5, 2006, this Court ordered Defendant Jennifer Strong to file a Special Report addressing the Plaintiff's excessive force claims. On March 20, 2006, this Court granted the Plaintiff's Motion to Amend his Complaint adding Sheriff Jimmy Abbett as a Defendant and ordered Sheriff Abbett to file a Special Report addressing the Plaintiff's claims.

The Plaintiff was convicted of Trafficking Cocaine on April 14, 2005. (Exhibit A, Inmate File of Corey Effentis Edwards, "Inmate File," Conviction Report dated June 3, 2005.) The Plaintiff was arrested on June 1, 2005, on a warrant of Distribution of a Controlled

---

[1] The Plaintiff also named Robie Frazer as a Defendant in this case. However, Robie Frazer has not been served, and therefore is not a party to this case. (<u>See</u> Doc. 18.) Further, the Plaintiff's time limit for providing the Court with a correct address for Robie Frazer has expired. (<u>See</u> Doc. 25.)

Substance.  (Exhibit B, Inmate File, Alabama Uniform Arrest Report dated June 1, 2005.)  He was booked into the Tallapoosa County Jail that same day.  (Ex. B; Exhibit C, Inmate File, Summary dated June 1, 2005; Exhibit D, Inmate File, In-Processing Check List dated June 1, 2005.)  On June 16, 2005, he was bound to the grand jury on his charge for distribution of a controlled substance.  (Exhibit E, Inmate File, Court Action/Arrest Authentication dated June 16, 2005.)  The Plaintiff was released to the Department of Corrections on July 1, 2005.  (Exhibit F, Inmate File, Out-processing Check List dated July 1, 2005.)   The Plaintiff was held in the Tallapoosa County Jail from October 5, 2005, through October 7, 2005, in order to appear at Court on his charge for distribution of a controlled substance.  (Exhibit G, Inmate File, In-processing Check List dated October 5, 2005; Exhibit H, Inmate File, Order dated October 6, 2005; Exhibit I, Inmate File, Out-Processing Check List dated October 7, 2005.)  He pled guilty to this charge, was sentenced to eight years confinement, and returned to the custody of the Department of Corrections.  (Exhibit J, Inmate File, Guilty Plea dated October 6, 2005; Exhibit K, Inmate File, Conviction Report dated October 13, 2005; Ex. I.)

## PLAINTIFF'S ALLEGATIONS

The Plaintiff makes the following allegations:  (1) that he was sprayed with O.C., (2) that there was mold and fungus, (3) that he was not served adequate food, (4) that there are ants, gnats, and spiders in the jail, (5) that no fire drill has been conducted and that no plan of evacuation is posted, (6) that the classification system is inadequate, and (6) that the courts set bond incorrectly.  (Plaintiff's Complaint, pp. 3-6.)  The Plaintiff requests that the Jail go by the rules and regulations that are required by the state and for the Court to "see about the mold and fungus on walls and floors."  (Plaintiff's Complaint, p. 4.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit L[2], Declaration of Sheriff Jimmy Abbett[3], "Abbett decl.," ¶ 4; Exhibit M[4], Declaration of Jennifer Strong[5], "Strong decl.," ¶ 4.) Defendants raise the defenses of mootness, lack of standing, Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jimmy Abbett has delegated the responsibility for the day-to-day functions of the Tallapoosa County Jail to Blake Jennings, the Jail Administrator for Tallapoosa County. As Sheriff of Tallapoosa County, Sheriff Abbett is responsible for promulgating the policies governing the Tallapoosa County Jail. (Abbett decl., ¶ 5.) The Defendants have complied with all policies and procedures of the Tallapoosa County Jail. They are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (Abbett decl., ¶ 6; Strong decl., ¶ 5.)

### A.    Conditions of Confinement

The Tallapoosa County Jail was subject to an inspection by the State of Alabama

---

[2] The unsigned declaration of Jimmy Abbett is attached hereto. Jimmy Abbett has approved the attached declaration, and the signed declaration will be filed upon Defendants' counsel's receipt of the document.

[3] Sheriff Abbett is the duly elected Sheriff of Tallapoosa County, Alabama. He has served as Sheriff since 1995. Prior to serving as Sheriff, Sheriff Abbett retired from the Alabama Bureau of Investigation where he served as an Investigator. (Abbett decl., ¶ 2.)

[4] The unsigned declaration of Jennifer Strong is attached hereto. Jennifer Strong has approved the attached declaration, and the signed declaration will be filed upon Defendants' counsel's receipt of the document.

[5] Jennifer Strong is a Corrections Officer at the Tallapoosa County Jail and was so employed on or about June 7, 2005. Officer Strong is a graduate of the Corrections Academy and is certified in the use of Oleoresin Capsicum (O.C.) Spray. (Strong decl., ¶ 2.

Department of Corrections on March 7, 2006.  The Jail received a Public Health Inspection score of 100 for the Detention area and 97 for the Kitchen area.  (Abbett decl., ¶ 17; Exhibit N, Declaration of Blake Jennings[6], "Jennings decl.," ¶ 16; Exhibit 1 to Jennings decl, State of Alabama Department of Corrections Jail Inspection Report, "Inspection Report.")  The inspector noted that all areas of the Jail were clean and that the staff was to be commended.  (Abbett decl., ¶ 18; Jennings decl., ¶ 17; Ex. 1, Inspection Report.)  It was further noted that all safety features were in good order including emergency exits and fire apparatus.  Further, the inspector noted that an Emergency fire Evacuation plan is posted and that fire and safety precautions are observed.  (Abbett decl., ¶ 19; Jennings decl., ¶ 18; Ex. 1, Inspection Report.)  The Jail received the highest score in all areas of food services.  Specifically, the inspector noted that three meals were served per day and that the quality and quantity of food preparation was good.  (Abbett decl., ¶ 20; Jennings decl., ¶ 19; Ex. 1, Inspection Report.)

It is the policy of the Tallapoosa County Jail that sanitation and hygienic living conditions in the jail are maintained in an appropriate manner so as to provide a healthful environment.  The Jail Administrator makes certain that the jail is checked on a daily basis for sanitation.  The Tallapoosa County Jail is inspected by the State of Alabama Department of Corrections as well as the Tallapoosa County Health Department.  Interim inspections are carried out by the jail staff at the direction of the Jail Administrator.  The Jail Administrator has the jail cleaned on a daily basis using approved sanitary supplies.  Inmates are allowed to request cleaning materials to clean their living quarters at any time of day.  (Abbett decl., ¶ 21; Jennings decl., ¶ 20.)

It is the policy of the Tallapoosa County Jail to provide regular insect and vermin control

---

[6] Blake Jennings has been employed by the Tallapoosa County Sheriff's Department since 1998.  He served as an Investigator from 1998 until he became the Jail Administrator on March 19, 2005.  Jail Administrator Jennings is a graduate of the Corrections Academy.  (Jennings decl., ¶ 2.)

with the jail.  The Jail Administrator arranges for monthly professional insect and vermin control services for the Tallapoosa County.  (Abbett decl., ¶ 22; Jennings decl., ¶ 21.)

It is the policy of the Tallapoosa County Jail that all necessary steps are taken to ensure the safety of inmates and jail staff through fire prevention practices in the event of a fire in the Jail.  (Abbett decl., ¶ 23; Jennings decl., ¶ 22.)  The Shift Supervisor inspects the jail for safety violations once per shift and corrects any deficiencies.  (Abbett decl., ¶ 24; Jennings decl., ¶ 23.) Fire extinguishers are located strategically throughout the Jail.  (Abbett decl., ¶ 25; Jennings decl., ¶ 24.)   Fire-retardant mattresses are utilized in the Jail, and no combustible trash receptacles are used.  (Abbett decl., ¶ 26; Jennings decl., ¶ 25.)  It is the policy of the Tallapoosa County Jail to provide for prompt evacuation of the Jail in the event of a fire or an emergency. An evacuation plan is posted in the Jail.  (Abbett decl., ¶ 27; Jennings decl., ¶ 26.)

It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.  (Abbett decl., ¶ 28; Jennings decl., ¶ 27.)  Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.  (Abbett decl., ¶ 29; Jennings decl., ¶ 28.)  Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.  (Abbett decl., ¶ 30; Jennings decl., ¶ 29.)  Inmates are housed separately from any known enemies.  (Abbett decl., ¶ 31; Jennings decl., ¶ 30.)  An inmate may make an oral or written request at any time to any officer to be moved to a different cell if he has been threatened or is otherwise in danger.  Each cell is equipped with an intercom, so an inmate may make such a request at any time.  (Abbett decl., ¶ 32; Jennings decl., ¶ 31.)  All Tallapoosa County Jail officers understand that such a request is to be taken seriously.  In the event an inmate requests to be moved because he has been

threatened or is otherwise in danger, that inmate will be moved immediately.  (Abbett decl., ¶ 33; Jennings decl., ¶ 32.)

An inmate's bond is set by the presiding judge in his/her case, and neither Sheriff Abbett nor any of his staff have the authority to alter it.  (Abbett decl., ¶ 34; Jennings decl., ¶ 33.)

### B.    Use of Force

It is the policy of the Tallapoosa County Jail that the use of force against an inmate is permitted only under certain circumstances and when no reasonable alternative is immediately available.  (Abbett decl., ¶ 7; Jennings decl., ¶ 6.)   According to the Policy and Procedure Directive jail personnel may use physical force as it relates to five (5) situations:   (1) self-defense; (2) defense of third persons; (3) prevention of a crime; (4) prevention of escape; and (5) enforcement of the Tallapoosa County Jail Rules.  (Abbett decl., ¶ 8; Jennings decl., ¶ 7.)  Prior to any use of physical force, all reasonable attempts should be made to identify and utilize alternative means to deal with the situation.  (Abbett decl., ¶ 9; Jennings decl., ¶ 8.)  Physical force should be used only to that degree necessary under the facts and circumstances of the individual situation.  (Abbett decl., ¶ 10; Jennings decl., ¶ 9.)  As soon as the inmate is subdued, restrained, or stopped his actions, the force should be discontinued.  (Abbett decl., ¶ 11; Jennings decl., ¶ 10.)  Force is not to be used against an inmate as a means of punishment.  (Abbett decl., ¶ 12; Jennings decl., ¶ 11.)  Following any use of force in the Tallapoosa County Jail, a detailed incident report must be completed and submitted to the Jail Administrator.  (Abbett decl., ¶ 13; Jennings decl., ¶ 12.)

It is recognized by the Tallapoosa County Jail that the use of chemical agents is one of the least amounts of force one can use.  (Abbett decl., ¶ 14; Jennings decl., ¶ 13.)  It is the policy of the Tallapoosa County Jail that any staff member using chemical dispensers must have

completed training on chemical aerosol spray.  Unless in an emergency type situation, the only type of chemical spray to be used in he jail is O.C. spray which will be furnished by the jail.  The jail furnishes 10% O.C. spray in four ounce cans or dispensers.  (Abbett decl., ¶ 15; Jennings decl., ¶ 14.)  In the event that the administration of O.C. spray is necessary, the inmate will immediately thereafter be provided with cold water with which to flush his eyes.  If O.C. spray is used in the confines of the jail, the affected area of the jail is to be cleaned as soon as practicable. (Abbett decl., ¶ 16; Jennings decl., ¶ 15.)

On or about June 7, 2005, Corrections Officer Jennifer Strong was on duty as a corrections officer on the night shift at the Tallapoosa County Jail, and Robie Frazer was the on duty Sergeant.  (Strong decl., ¶¶ 2 and 6; Exhibit O, Declaration of Robie Frazer, "Frazer decl.," ¶ 6; Exhibit P, Incident Report dated June 7, 2005, "Incident Report.")  On that night, after the lights were out, the Plaintiff and other inmates in his cell were creating a disturbance by being rowdy and noisy in their cell.  (Strong decl., ¶ 7; Frazer decl., ¶ 7; Incident Report.)  These inmates were given repeated orders from Sergeant Robie Frazer and other officers to cease their rowdy and noisy behavior.  However, the inmates refused these orders and continued to create a disturbance.  (Strong decl., ¶ 8; Frazer decl., ¶ 8; Incident Report.)  The inmates were moved to C-9, the disciplinary cell.  However they continued to exhibit the same behavior.  (Frazer decl., ¶ 9; Incident Report.)  Because the inmates had repeatedly refused direct orders from the officers and continued to create a disturbance, the overall discipline and order of the jail was threatened. Therefore, upon the orders of the on-duty Sergeant, Officer Strong sprayed a burst of O.C. spray into the cell.  No other force was necessary to quell the disturbance.  (Strong decl., ¶ 9; Frazer decl., ¶ 10; Incident Report.)

Only the minimum degree of force necessary was used in this situation. The O.C. spray was used to restore discipline, not to maliciously or sadistically cause harm to the inmates involved. (Strong decl., ¶ 10; Frazer decl., ¶ 11; Incident Report.) Once order was restored, no further force was used. (Strong decl., ¶ 10; Incident Report.) After the single burst of O.C. spray was administered, the inmates were allowed to shower and clean the cell. Sergeant Frazer also took the inmates outside for fresh air. (Frazer decl., ¶ 12; Incident Report.) There were no further problems with these inmates that evening. (Strong decl., ¶ 11; Frazer decl., ¶ 13; Incident Report.)

## II.     LAW

### A.     This Court lacks subject matter jurisdiction over Plaintiff's Claims.

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). In the instant case, **all** the Plaintiff's claims are for injunctive relief. Therefore, the Plaintiff cannot overcome the initial hurdle of subject matter jurisdiction because his claims are moot and because he lacks standing to pursue his claims.

### 1.     All Plaintiff's claims are moot.

"[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because Plaintiff has been released from the Tallapoosa County Jail, his claims are moot. Zatler, at 399 ("In view of [the plaintiff's] subsequent release [from the correctional facility where claims arose], we find that his claims for declaratory and injunctive relief are now moot."); see also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985)

("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.  Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects."  (citations omitted)); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (holding that prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."  (citation omitted)). Accordingly, the Plaintiff's Complaint fails for lack of subject matter jurisdiction.

**2.     The Plaintiff lacks standing to pursue his claims.**

A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  Id. 461 U.S. at 98.  After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing.  Id. 461 U.S. at 99-100.  The Court stated that the plaintiff's standing rested solely on pure speculation

that he *might* be stopped by the police, *might* be arrested, and *might* again create a disturbance in the jail and *might* be subjected to another chokehold. Id. 461 U.S. at 108. The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. Id.

Here, any injunctive relief is equally speculative. Because he is no longer incarcerated in the Tallapoosa County Jail, the Plaintiff's claim is, in essence, that he *might* be released from the facility at which he is currently incarcerated, *might* be stopped by police, *might* be arrested by an officer with authority to incarcerate someone in the Tallapoosa County Jail, that he *might* be booked into the Tallapoosa County Jail, that he *might* be subjected to the alleged actions and/or conditions made the basis of his Complaint. Such speculation into future conduct does not grant the Plaintiff standing. Lyons, 461 U.S. at 108.

 **B.** **All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against the Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983, and, accordingly, claims against them in their official capacities fail to state a claim upon which relief can be granted. Id.; Carr, 916 F.2d at 1525 n.3 (11th Cir. 1990).

### C. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.

#### 1. Plaintiff has failed to exhaust all Administrative Remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e (a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Jail. Second, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Despite the availability of a grievance procedure at the Tallapoosa County Jail, the evidence shows that Plaintiff did not file a grievance regarding the incident made the basis of his Complaint. Further, even though the Plaintiff alleges that he did file a grievance, he did not allege that he pursued the available appeal to the Sheriff or the County Attorney. And, in fact, it is clear that the Plaintiff did not appeal any grievance to the Sheriff because the Sheriff has never received a grievance concerning the allegations made the basis of his Complaint.

11

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Tallapoosa County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former §1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731, 741  (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-1313 (11th Cir. 2002) (quotation marks omitted).  The Plaintiff has not alleged that he was injured at all a result of the incident and conditions made the basis of his Complaint.  Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

**D.    Alternatively, Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as the Sheriff and a Corrections Officer of Tallapoosa County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d 1419, 1424 (11th Cir. 1997).  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state

where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

1.    **The Plaintiff's Constitutional Rights were not violated.**

a.    **Excessive Force Claim**

The standard used in analyzing excessive force claims based on the Fourteenth Amendment is as follows:  "[W]hether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1984); Bozeman v. Orum, 422 F.3d 125 (11th Cir. 2005).  The Whitley Court reasoned that:

> Corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmate. . . .  Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

Id. at 6 (citations omitted).  The factors to be considered in evaluating whether the use of force was wanton and unnecessary include: 1) the need for application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate.  Whitley v. Albers, 475 U.S. at 1085.

"The infliction of pain in the course of a prison security measure . . . , does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley v. Albers, 475 U.S. 312, 319 (1986).  In evaluating the challenged conduct of jail officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment.  Ort v. White, 813 F.2d 318, 322 (11th

Cir. 1987). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. . . .  That deference extends to prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." Whitley, 475 U.S. at 321-322.  "[T]he courts give great deference to the actions of prison officials in applying prophylactic or preventive measures intended to reduce the incidence of riots and other breaches of prison discipline." Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991).  "When the 'ever-present potential for violent confrontation and conflagration,' . . . ripens into *actual* unrest and conflict, the admonition that 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,' . . . carries special weight."[7] Whitley, 475 U.S. at 321 (emphasis in original).  In Whitley v. Albers, 475 U.S. 312, 319 (1986), the court held that the "shooting [of an inmate in the leg] was part and parcel of a good-faith effort to restore prison security . . . [and] did not violate respondent's Eighth Amendment right to be free from cruel and unusual punishments."

In the instant case, there was a definite need for the application of force, the inmates created a disturbance, refused repeated orders to cease, and refused to cease after being moved.  The amount of force used – O.C. spray – was the minimum amount of force necessary to quell the disturbance. The officers had attempted to move the inmates to the disciplinary cell prior to having to resort to force.  Finally, there is no evidence that the Plaintiff was injured from this force.  Clearly, in the instant case, the minimal force used was in good faith effort to restore discipline, not maliciously or sadistically for the very purpose of causing harm.

---

[7] The Supreme Court of the United States has recognized that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Saucier v. Katz, 533 U.S. 194, 209 (U.S. 2001).

While there is a lack of Eleventh Circuit precedent regarding the use of O.C. spray in jail settings, other Circuits have analyzed this issue. See Stewart v. Stewart, 60 Fed. Appx. 20 (9th Cir. 2003) (prison policy of straying entire pod areas whenever an individual prisoner acted in a disruptive manner fell within the "wide-ranging zone of deference accorded to prison officials in shaping 'prophylactic or preventive measures intended to reduce the incidence of breaches of prison discipline.'" Id. at 22); Siggers v. Renner, 37 Fed. Appx. 138 (6th Cir. 2002) (allegations that prison officials used pepper spray to "force his submission to a haircut" did not make out a violation of the Eighth Amendment where he did not sustain a serious injury, the force was needed because of the refusal to obey guards orders, guards reasonably perceived that prisoner's refusal to obey orders was a threat to the security of the prison, and prisoner was allowed to shower and see nurse afterwards); Baldwin v. Stalder, 137 F. 3d 836 (5th Cir. 1998) (Prison guard's actions in using pepper mace to quell inmate disturbance was a good faith effort to maintain or restore discipline and did not constitute excessive force.); Price v. Dixon, 961 F. Supp. 894 (E.D.N.C. 1997) ("[I]it is accepted that prisoners may be subdued with mace when acting disorderly as long as the use is neither excessive nor applied solely for the purpose of inflicting pain or punishment. See Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir.1984), cert. denied, 470 U.S. 1085, 105 S. Ct. 1846, 85 L. Ed. 2d 144 (1985); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir.1979). "Mace can be constitutionally used in small quantities to 'prevent riots and escapes' or to control a 'recalcitrant inmate.' "Williams v. Benjamin, 77 F. 3d 756, 763 (4th Cir.1996) (quoting Landman v. Peyton, 370 F.2d 135, 138 & n. 2 (4th Cir.1966), cert. denied, 388 U.S. 920, 87 S. Ct. 2142, 18 L. Ed. 2d 1367 (1967)). In fact, "a limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." Benjamin, 77 F. 3d at 763; Id. at 900). Clearly, according to the foregoing case law, the

application of O.C. spray in the instant case was well within constitutional parameters.

Further, de minimus uses of force cannot make out a claim for a constitutional violation. Hudson v. McMillian, 503 U.S. 1, 9-10 (1993). It is obvious that the force used in the instant case – one burst of O.C. spray – was a de minimus use of force. Accordingly, the Plaintiff cannot make out a claim for a constitutional violation.

### b.  Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:  (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation.[8]  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 501 U.S. 294. There is insufficient evidence to establish either the objective or subjective components of the Plaintiff's conditions of confinement claims.

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations are required to make out a conditions-of-confinement claim*" under the Eighth Amendment. Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he Constitution does

---

[8] "This court holds that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons."  Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).

not mandate comfortable prisons." Chandler, 379 F.3d. at 1289. In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual." The evidence shows that the Defendants have acted pursuant to sound policies and procedures to ensure that the conditions of confinement at the Tallapoosa County Jail are well within constitutional parameters. In fact, the Tallapoosa County Jail received high marks on all the areas complained of by the Plaintiff when inspected by the State of Alabama Department of Corrections. Clearly, the Plaintiff has not been subjected to any conditions that were objectively "cruel and unusual."

Even if the conditions were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-

comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536.

In the instant case, even if there were an excessive risk to his health or safety, there is no allegation that Sheriff Abbett or Jennifer Strong knew of or disregarded that risk. Evidence that a condition existed without accompanying evidence that each Defendant was deliberately indifferent to such a condition does not establish constitutional liability. See, e.g., Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) ("To prevail on an Eighth Amendment claim in this context, an inmate must show that correctional officers were deliberately indifferent to the risk of harm posed by the raw sewage. Thus, not every overflowed toilet in a prison amounts to a constitutional violation.") (citations omitted). The Plaintiff's entire inmate file has been submitted and contains no request forms regarding the allegations made the basis of his Complaint. Further, since the conditions of the Tallapoosa County Jail have been rated so highly by State Department of Corrections officials, it is obvious that there could be no subjective awareness on the part of the Defendants that any corrections needed to be made. Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, supra, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. Porter v. Nussle, 534 U.S. 516, 528 (2002); see also Copeland, 87 F.3d at 268 (noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimus imposition that did not amount to a constitutional violation). The Plaintiff has not alleged that he suffered any injury as a result of the allegations made the basis of his

Complaint. Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

> **2.      No clearly established law provided the Defendants with fair warning that their conduct was unlawful.**

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In light of applicable Eleventh Circuit law, it is obvious that the Defendants have done nothing to cross any bright line of clearly established constitutional law. Therefore, the Plaintiff cannot meet his burden in this regard, and the Defendants are entitled to qualified immunity on Plaintiff's claims.

> **E.      Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988, 999 (11th Cir. 1995). The requisite causal connection may be shown by the

personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397, 401 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Abbett was at all personally involved in the alleged excessive force claim. Further, the Plaintiff has failed to allege that either Sheriff Abbett or Jennifer Strong was personally involved in the alleged conditions of confinement.

To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants. In fact, it is clear from the face of the Plaintiffs Motion to Amend (Doc. 20) that he seeks to hold Sheriff Abbett liable based upon a theory of *respondeat superior* as his sole allegation against Sheriff Abbett is: "Sheriff Jimmy Abbet [sic], is the sheriff of Tallopossa [sic] County Jail and he is the one in charge of the employees and

prisoners." As there is no *respondeat superior* liability under §1983, Plaintiff's claims must fail.

### F.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. <u>Greason v. Kemp</u>, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. <u>See Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[9] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts School of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

### CONCLUSION

Defendants deny each and every allegation made by Plaintiff Corey Effentis Edwards, in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

---

[9] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-251 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a

Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 1st day of May, 2006.

**s/Amanda Kay Morgan**
GARY L. WILLFORD, JR. Bar Number:  WIL198
AMANDA KAY MORGAN Bar No.  ALL079
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  amorgan@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 1st day of May, 2006, I have electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true
and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-
CM/ECF participant:

Cory Effentis Edwards
AIS#241279
Draper Correctional Facility
P.O. Box 1107
Elmore, AL 36025

**s/Amanda Kay Morgan**
OF COUNSEL